OPINION
{¶ 1} Nicole Mertz appeals from the trial court's decision and entry finding her consent to the adoption of her biological child, S.B.D., by appellee Jennifer Denson not required because she had failed without justifiable cause to communicate with the child.
 {¶ 2} Mertz advances three assignments of error on appeal. First, she contends the trial court erred by not finding that she had facially justifiable cause for failing to communicate with S.B.D. Second, she claims the manifest weight of the evidence does not support the trial court's determination that she lacked justifiable cause for failing to communicate with S.B.D. Third, she asserts that the trial court erred by failing to declare R.C. § 3107.07(A), which governs the need for a parent's consent to adoption, unconstitutional either on its face or as applied.
 {¶ 3} The present appeal stems from an adoption petition filed by Jennifer Denson on November 21, 2005. The petition indicated that Denson is married to S.B.D.'s biological father, Bradley Denson, and that the child resides with them. It also alleged, among other things, that Mertz's consent to adoption was not required because she had failed without justifiable cause to communicate with S.B.D. for a period of at least one year immediately preceding the filing of the petition.
 {¶ 4} The trial court held a hearing on the petition in March and April of 2006. Based on the testimony presented at the hearing, the trial court made the following findings of fact:
 {¶ 5} "1. [S.B.D.] was born to Ms. Mertz and Bradley J. Denson (hereinafter Mr. Denson) on April 15, 1997.
 {¶ 6} "2. The parties were unmarried. Legal proceedings involving custody, visitation, and child support issues began in Juvenile Court within three months of birth and have been continuous throughout this child's life, through January 2004. The parents have a history of not being able to resolve issues between themselves for the benefit of their son.
 {¶ 7} "3. Ms. Mertz had custody of [S.B.D.] from birth until August 21, 1998, when she lost custody to Mr. Denson following a contested custody battle.
 {¶ 8} "4. Ms. Mertz was granted visitation every Wednesday (6:00-8:00) and every Sunday (1:00-8:00) and every other holiday. She had no overnight visits and no extended summer visits.
 {¶ 9} "5. Ms. Mertz exercised some visitation while filing pro se motions for contempt periodically against Mr. Denson. There was one finding of contempt against Mr. Denson on April 2, 2001, wherein he was given a purge provision. The Magistrate noted, `Given the tumultuous relationship of the parties,' visitation exchanges were ordered to take place at Family Connection visitation house. All other motions between the parties were found not well taken, withdrawn by the party or merged into an agreed entry resolving all issues with no other findings of contempt.
 {¶ 10} "6. The official records of Family Connection show that the Court order under which they were operating was file stamped February 27, 2003. Their records showed that Mr. Denson cancelled nine visits between May 14, 2003, and November 19, 2003, and that Ms. Mertz cancelled twelve visits between March 12, 2003, and November 30, 2003. Family Connection cancelled four visits due to non payment of their fees by Ms. Mertz. The records further show that the custodial parent, Mr. Denson, of his own volition, stopped all visits effective November 30, 2003; and that Family Connection notified Ms. Mertz of this fact by letter dated December 2, 2003. The last visit at Family Connection occurred on October 26, 2003.
 {¶ 11} "7. Ms. Mertz last saw [S.B.D.] at her mother's house at Christmas, 2003, during a visit which Mr. Denson allowed at the request of Jeannine Mertz, mother of Ms. Mertz.
 {¶ 12} "8. Ms. Mertz' reasons for cancelling visits were (a) unable to afford the fee at Family Connection and (b) illness and hospitalization of her younger daughter. Mr. Denson's reasons for cancelling were (a) child was out of town, (b) he was on his honeymoon and (c) concern over Ms. Mertz being involved in a physical altercation with her then-current boyfriend.
 {¶ 13} "9. Ms. Mertz' annual income for the years in question was between $5,000 to $7,000.
 {¶ 14} "10. Mr. Denson testified that he only has a cell phone; that he's had the same number for the last three years; he uses this number for his self-employment (Brad's Custom Services) which he operates out of his home; and that he screens his calls.
 {¶ 15} "11. Mr. Denson testified that he lived at 122 Floral Ave., Troy, and the Juvenile Court file, which the Court took judicial notice of, verifies that Ms. Mertz knew of this address in 2002 and 2003. Mr. Denson moved to 4125 S. Iddings Rd., West Milton in July, 2004, and acknowledges that he never gave Ms. Mertz this new address.
 {¶ 16} "12. Ms. Mertz provided no gifts, cards or other communication to [S.B.D.] for Christmas, 2003, 2004 or 2005, or birthday 2004 or 2005. Ms. Mertz had school contact with [S.B.D.'s] teacher, who would not provide Mr. Denson's address.
 {¶ 17} "13. Mr. and Mrs. Denson married October 4, 2003, and lived together for several years prior. Ms. (Zahumensky) Denson had her picture and place of employment in a local newspaper ad every month from October, 2003 to October 2005 and was very public. Ms. Mertz doesn't buy or read the newspaper.
 {¶ 18} "14. A mutual friend/acquaintance, Michelle Copess, testified that she had a conversation with Ms. Mertz [in] January, 2005, in which Ms. Mertz asked her how [S.B.D.] was, stating that she hadn't seen him since Mr. and Mrs. Denson were married. Ms. Mertz then replied that life is good for [S.B.D.] and maybe it's better that way.
 {¶ 19} "15. Mr. Denson denied Jeannine Mertz a Christmas visit in 2004; but said you may come to our house and visit there. Jeannine Mertz never called back because Mr. Denson wouldn't allow her to remove [S.B.D.] from the home. She claimed Mr. Denson never gave her his new address but clearly she could have found out by exercising her visit at Mr. Denson's home. Ms. Mertz' mother knew Ms. Mertz didn't have Mr. Denson's address and was making some attempt to find it.
 {¶ 20} "16. Both Jeannine Mertz and her brother, Nick Gwin, know Mr. Denson's parents and neither asked his parents for Mr. Denson's address.
 {¶ 21} "17. Ms. Mertz testified that she called Mr. Denson's cell phone number on numerous occasions and if he recognized the phone number she was calling from that he wouldn't answer and he wouldn't return her messages. If she called from an unknown number, he would deny visits or any contact or would cuss her out.
 {¶ 22} "18. Ms. Mertz never checked the county auditor's office for real estate records and address for Mr. Denson, which is a public record.
 {¶ 23} "19. Ms. Mertz had eight months (December 2003 until July 2004) to file a contempt action for lack of visitation during which time she knew Mr. Denson's address. Ms. Mertz had at least six months thereafter that she could have filed, using his last known address, and the Post Office would have forwarded the mail.
 {¶ 24} "20. Ms. Mertz had avenues available to her to obtain Mr. Denson's address and she didn't pursue those options.
 {¶ 25} "21. Mr. Denson made it difficult for Ms. Mertz to exercise visits by unilaterally stopping visitations at the Family Connection visitation house, not taking or answering her phone calls and not providing her with his address."
 {¶ 26} After making the foregoing factual findings, the trial court concluded that Jennifer Denson had established Mertz's failure to communicate with S.B.D. for a one-year period immediately prior to the filing of the adoption petition. The trial court then found that Mertz had come forward with some evidence that the lack of communication was justified. The trial court ultimately concluded, however, that Denson had proven, by clear and convincing evidence, that Mertz's failure to communicate with S.B.D. was not justified. In support of this conclusion, the trial court reasoned:
 {¶ 27} "While Mr. Denson did attempt to thwart the efforts of Ms. Mertz to visit with her child, the petitioner has shown by clear and convincing evidence that Ms. Mertz's failure to communicate with her child was not justifiable as she had other options available to her which she did not pursue.
 {¶ 28} "Therefore, the Court finds that the consent of Nichol Mertz is not required because she is a parent who has failed without justifiable cause to communicate with her son for a period of at least one year immediately preceding the filing of the adoption petition."
 {¶ 29} Mertz's first two assignments of error on appeal involve R.C. § 3107.07(A), which provides that a parent's consent to adoption is not required if "the parent has failed without justifiable cause to communicate with the minor" for at least the one-year period immediately preceding the adoption petition. Mertz does not dispute that she failed to communicate with S.B.D. for the requisite one-year period. She takes issue, however, with the trial court's finding that her lack of communication was without justifiable cause.
 {¶ 30} "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." In re Adoption of Holcomb (1985),18 Ohio St.3d 361, paragraph four of the syllabus. Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to communicate with the child for the one-year period, the burden of going forward with evidence shifts to the natural parent to show some facially justifiable cause for the failure. In re Adoption of Bovett (1987), 33 Ohio St.3d 102, paragraph two of the syllabus. The burden of proof, however, remains at all times with the petitioner, who must establish the lack of justifiable cause by clear and convincing evidence. Id. "Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence." Holcomb, supra, at paragraph three of the syllabus.
 {¶ 31} In her first assignment of error, Mertz contends she demonstrated some "facially justifiable cause" for failing to communicate with S.B.D. She also argues that the trial court erred in holding her to a higher test and in failing to apply the "facially justifiable cause" standard appropriately. We find no merit in these assertions. In Bovett, supra, the Ohio Supreme Court clarified the parties' respective burdens under R.C. §3107.07(A) as follows:
 {¶ 32} "* * * [A] natural parent may not simply remain mute while the petitioner is forced to demonstrate why the parent's failure to [communicate] is unjustifiable. Rather, once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to [communicate with] the child for at least the requisite one-year period, the burden ofgoing forward with the evidence is on the natural parent to show some facially justifiable cause for such failure. The burden ofproof, however, remains with the petitioner." Bovett,33 Ohio St.3d at 104.
 {¶ 33} In the present case, the trial court recognized and properly applied the foregoing burdens. It first found that Jennifer Denson had proven Mertz's failure to communicate by clear and convincing evidence. It then found that Mertz had come forward with evidence of some justifiable cause for her failure to communicate.[1] The trial court next recognized that Denson bore the ultimate burden to prove, again by clear and convincing evidence, that Mertz's failure to communicate was without justifiable cause. Finally, the trial court concluded that Denson had met this burden. (Doc. #25 at Conclusions of Law, ¶ 1-6). We see no error in the trial court's analytic approach or its application of the parties' respective burdens. Mertz's first assignment of error is overruled.
 {¶ 34} In her second assignment of error, Mertz challenges the trial court's finding that Denson proved, by clear and convincing evidence, the absence of justifiable cause for Mertz's non-communication with S.B.D. Mertz asserts that the trial court's finding on this issue is against the weight of the evidence.
 {¶ 35} Having reviewed the record, we agree that Jennifer Denson failed to prove the absence of justifiable cause for Mertz's non-communication by clear and convincing evidence. In its findings of fact, the trial court determined that Bradley and Jennifer Denson moved with S.B.D. and failed to give Mertz their new address. The trial court also found that Bradley Denson personally terminated all visitation between Mertz and S.B.D. at the Family Connection center. Additionally, the trial court concluded that Bradley Denson had refused to accept Mertz's telephone calls to him. In fact, the trial court expressly found that "Mr. Denson made it difficult for Ms. Mertz to exercise visits by unilaterally stopping visitations at the Family Connection visitation house, not taking or answering her telephone calls and not providing her with his address."
 {¶ 36} In light of the foregoing facts, we find significant interference by Bradley Denson with communication between Mertz and S.B.D. See Holcomb, supra, at paragraph three of the syllabus (recognizing that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child * * * is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child"). Indeed, by moving to an undisclosed location, cancelling all visitation, and refusing to take Mertz's telephone calls, Mr. Denson made it exceedingly difficult for Mertz to communicate with him or S.B.D. We note too that this is not a case where the non-custodial parent made no effort to contact her child. The trial court found that Mertz spoke to S.B.D.'s school teacher but was unable to obtain the Densons' address. As noted above, the trial court also found that Mertz called Bradley Denson personally but that he refused to talk to her.
 {¶ 37} In ruling against Mertz, however, the trial court noted that she could have attempted to locate the Densons through relatives or could have investigated real estate records to find the Densons' address. The trial court also reasoned that Mertz could have filed a contempt action by using the Densons' last known address and having the complaint forwarded through the mail. We do not disagree with these observations, and Mertz certainly could have taken such steps. But she should not have her parental rights involuntarily terminated merely because she failed to hunt down the Densons, who rebuffed the communication attempts that she did make. In reaching this conclusion, we note again that the central question is whether Bradley Denson significantly interfered with Mertz's communication with S.B.D. For the reasons set forth above, we believe such interference exists, even if Mertz possibly could have done more to overcome it.
 {¶ 38} We note too that even if Mertz might have obtained the Densons' new address through one of the methods mentioned by the trial court, we have no reason to believe she would have been allowed to communicate with S.B.D. As noted above, Mertz already had Bradley Denson's cell phone number, yet he refused to take her calls. The record gives us no reason to believe the result would have been different if only Mertz had obtained the Densons' address too.
 {¶ 39} In support of the trial court's ruling, Jennifer Denson cites In the Matter of the Adoption of TMP, Champaign App. No. 2003-CA-1, 2003-Ohio-2404. Upon review, we find TMP to be distinguishable. In that case, the mother of a minor child moved without telling the non-custodial father where she and her new spouse had taken the child. Although the father knew where the child's maternal grandparents lived, the trial court disbelieved his testimony that he had left telephone messages with them in an attempt to locate his child. On appeal, we noted that "the only substantial evidence supporting [the father's] argument that he was unjustifiably prevented from communicating with the child is his own testimony."
 {¶ 40} Unlike TMP, the record in the present case contains evidence that Bradley Denson significantly interfered in Mertz's efforts to communicate with S.B.D. Most notably, the trial court found that Mertz had attempted to contact Mr. Denson personally through his cell phone but that he had refused her calls. This fact alone meaningfully distinguishes the present case fromTMP. As noted above, the Densons also moved without telling Mertz where they took S.B.D. and denied her visitation without any court authorization. In light of these facts, the trial court erred in finding clear and convincing evidence to support Jennifer Denson's claim that Mertz lacked justifiable cause for her non-communication with S.B.D. Mertz's second assignment of error is sustained.
 {¶ 41} Finally, we need not address Mertz's third assignment of error, which challenges the constitutionality of R.C. §3107.07(A). It is well settled that constitutional issues should be avoided if an appeal can be resolved on other grounds.Krygsman v. Gerken (July 3, 1997), Montgomery App. No. 16062;Hall China Co. v. Public Utilities Comm. (1977),50 Ohio St.2d 206, 210. Accordingly, Mertz's third assignment of error is overruled as moot.
 {¶ 42} The judgment of the Miami County Common Pleas Court, Probate Division, is hereby reversed and the cause is remanded for further proceedings consistent with this opinion.[2]
Grady, P.J., and Donovan, J., concur.
[1] Although the trial court did not use the word "facially" in reference to Mertz's showing, its analysis makes clear (1) that it was applying the burden-shifting approach set forth inBovett and (2) that it found Mertz had met her burden of coming forward with evidence to support a claim of justifiable cause.
[2] We note that Jennifer Denson's adoption petition remains pending in the Probate Division of the Miami County Common Pleas Court. Based on the reasoning set forth herein, however, Denson has failed to establish that Mertz's consent to the adoption is not required.