[Cite as *In re R.L.H.*, 2013-Ohio-3462.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| THE ADOPTION OF: | : | Appellate Case No.   25734 |
| | : | |
| R.L.H. | : | Trial Court Case No. 12-ADP-110 |
| | : | |
| | : | |
| | : | (Probate Appeal from |
| | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of August, 2013.

. . . . . . . . . . .

MARK D. WEBB, Atty. Reg. #0085089, John D. Smith Co., LPA, 140 North Main Street, Suite B, Springboro, Ohio 45066
        Attorney for Appellant

DAVID L. McNAMEE, Atty. Reg. #0068582, McNamee Law Offices, 42 Woodcroft Trial, Suite D, Beavercreek, Ohio 45430
        Attorney for Appellee

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    D.Q. ("Mother") appeals from the trial court's judgment entry finding her consent to the adoption of her daughter R.L.H. not required. The trial court reached this

conclusion after finding that Mother had failed without justifiable cause to have more than de minimis contact with her daughter for at least one year immediately preceding an adoption petition filed by L.H., the new wife of the child's father, C.H. ("Father"), who has legal custody.

{¶ 2} Mother advances five related assignments of error on appeal. First, she contends the trial court erred in finding her consent to the adoption not required. Second, she claims the trial court erred in finding she failed to have contact or communicate with R.L.H. for at least one year preceding the adoption petition. Third, she argues that the trial court erred in shifting the burden of proof to her regarding whether justifiable cause existed for her failure to have contact with her daughter. Fourth, she asserts that the trial court erred in applying an inappropriate "illusory" test when analyzing the justifiable-cause issue. Fifth, even if use of the "illusory" test was appropriate, she contends the trial court erred in applying it.

{¶ 3} The record reflects that Mother gave birth to R.L.H. in May 2008. Mother and Father separated in October 2008. Father received legal custody of the child, and Mother received parenting time. In October 2009, Mother began a relationship with another man, K.Q., whom she later married. Mother admits that K.Q. was physically and emotionally abusive to her. This abuse caused Father to refuse to allow Mother to exercise parenting time in her home. In November 2010, Mother and Father mutually agreed to a court order granting Mother parenting time once a week for two hours at Erma's House, a supervised visitation center.

{¶ 4} Between January 2011 and July 2011, Mother exercised parenting time at Erma's house. Mother and K.Q. permanently separated in April 2011, and later divorced, after she was hospitalized due to his physical abuse. On August 4, 2011, Mother asked Erma's House to suspend her weekly parenting time with R.L.H. for thirty days. Erma's House agreed and told

Mother to contact the center by September 7, 2011, if she wished to resume her visits. Mother failed to do so, and Erma's House closed her case.

{¶ 5}    On October 1, 2012,  L.H. (who Father had married in July 2011), petitioned to adopt R.L.H. Based on the evidence presented during a March 25, 2013 hearing, the trial court found that "[a]fter Erma's House closed the case, and between October 1, 2011 and October 1, 2012, [Mother] did not exercise any parenting time with R.L.H." (Doc. #29 at 3). The trial court further found that Mother "did not see, speak with, or correspond with R.L.H. during this time period." (*Id.*). Pursuant to R.C. 3107.07(A), the trial court determined that Mother's consent to the adoption was not required because she had failed without justifiable cause to have more than de minimis contact with R.L.H. for the one year immediately preceding the adoption petition. (*Id.* at 8). This appeal by Mother followed.

{¶ 6}    The statute at issue, R.C. 3107.07(A), provides that consent to adoption is not required of a parent of a minor:

> when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 7}    The current statute was amended in 2008, and has been in effect since April 7, 2009.  Prior to the amendment, R.C. 3107.07(A) stated that consent to adoption would not be

required of a parent of a minor when "the parent has failed without justifiable cause to communicate with the minor * * * for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." Am.Sub.H.B. No. 7, 2008 Ohio Laws 172 (effective April 7, 2009).

**{¶ 8}** "By changing the standard from 'communicate,' which could imply a single contact, to 'more than de minimis contact,' which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child." *In re J.D.T.*, 7th Dist. Harrison No. 11 HA 10, 2012-Ohio-4537, 978 N.E.2d 602, ¶ 9.

**{¶ 9}** "Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to [have more than de minimis contact] with the child during the requisite one-year period and that there was no justifiable cause for the failure of [contact]." (Citations omitted.) *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). "Once the petitioner has established this failure, the burden of going forward shifts to the parent to show some facially justifiable cause for the failure. * * * The burden of proof, however, remains with the petitioner." *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 10, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919 (1987).

**{¶ 10}** "While R.C. 3107.07(A) has since been amended to add the 'de minimis contact' language, the burden of proof has remained the same." (Citation omitted.) *J.D.T.* at ¶ 11. The burden of clear and convincing evidence "is that measure or degree of proof which is

more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 11} In a recent decision, the Ohio Supreme Court clarified the standard of review under R.C. 3107.07(A). *See In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142. In *M.B.*, the court considered the branch of R.C. 3107.07(A) that pertains to provision of financial support. *Id*. at ¶ 2. However, due to the similar nature of the findings that are required for both prongs of R.C. 3107.07(A), the court's discussion appears to apply to the review of both requirements under R.C. 3107.07(A), i.e., that a parent's consent to adoption is not required if the parent either fails to provide financial support, or fails, without justifiable cause, to provide more than de minimis contact with the child.

{¶ 12} In *M.B.*, the Ohio Supreme Court first noted that probate courts undertake a two-step analysis when applying R.C. 3107.07(A). *Id*. at ¶ 23. The first step involves deciding a factual question–in that case, whether the parent willfully had failed to provide for the support and maintenance of a minor child. *Id.* at ¶ 21. Probate courts have discretion over the factual decision of "whether the biological parent provided support as contemplated by R.C. 3107.07(A) 'and his or her judgment should not be tampered with absent an abuse of discretion.'" (Citations omitted.) *Id.* In the second step, if a probate court finds a failure of support, the court then determines the issue of whether there is justifiable cause for the failure. *Id*. at ¶ 23. A probate court decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *Id*. at ¶ 24; *In re Adoption of Masa*,

23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus.

{¶ 13}  As we noted, these issues are similar to those involving contact with the minor child.  The first consideration is whether the parent has had more than de minimis contact with the child.  This is a factual consideration.  If the trial court decides that issue adversely to the parent, then the court further considers whether the lack of contact is justifiable.

{¶ 14}  Although Mother has divided her appellate argument into five assignments of error, the overriding issue before us is whether the trial court erred in finding, by clear and convincing evidence, that Mother had failed without justifiable cause to have more than de minimis contact with her daughter for at least one year immediately preceding the adoption petition.  As a means of analysis, we first will determine whether the record supports the trial court's resolution of that issue. *See In re B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶20-21 (explaining that an appellate court will not reverse a trial court's decision that an adoption petitioner met his or her burden under R.C. 3107.07 unless the decision is against the manifest weight of the evidence). We then will turn to Mother's specific arguments.

{¶ 15}  Here the manifest weight of the evidence supports the trial court's finding that Mother failed to have more than de minimis contact with R.L.H. during the relevant one-year time period, October 1, 2011 to October 1, 2012. The evidence supports the trial court's finding that Mother voluntarily suspended her agreed-upon, court-ordered parenting time at Erma's house in August 2011 and did not seek to reinstate it prior to October 1, 2012. (Hearing Tr. at 8-9, 36, 70). The evidence also supports the trial court's finding that Mother did not "see, speak with, or correspond with R.L.H." during the one-year time period. (*Id*. at 14, 27, 38). In her own testimony, Mother did not appear to challenge that fact. Rather, Mother argued that she, or others

acting on her behalf, repeatedly *had attempted* to arrange her contact or communication with R.L.H. during the relevant time frame. (*Id*. at 54-78).

{¶ 16} The critical issue on appeal, then, is whether L.H., the adoption petitioner, proved, by clear and convincing evidence, that Mother's lack of contact was without justifiable cause. In its ruling, the trial court recognized that significant interference by a custodial parent with contact between the non-custodial parent and the child, or significant discouragement of such contact, may establish justifiable cause for the non-custodial parent's lack of contact. *Holcomb*, 18 Ohio St.3d at 367-368, 481 N.E.2d 613.

{¶ 17} Mother argued below that justifiable cause existed because she unsuccessfully and repeatedly had attempted to establish contact with R.L.H. during the one-year period through Father and through R.L.H.'s maternal and paternal grandmothers. In addition, she argued that Father significantly had interfered with any contact or communication by twice moving and not providing her with his address or phone number. Finally, she cited stress from her physical abuse by K.Q. and the stress of being a single working mother caring for an infant child, apparently from her relationship with K.Q., as facially justifiable cause for her lack of contact with R.L.H.

{¶ 18} The trial court addressed the foregoing arguments and found them lacking merit. Significantly, it found the testimony about Mother and others trying to establish contact with R.L.H. on her behalf "not credible." (Doc. #29 at 5-6). Moreover, even if Mother had sent one text message to the paternal grandmother, as alleged, the trial court found this effort de minimis. (*Id*.). The trial court also reasoned that even if Mother's other family members had attempted contact with R.L.H., "there was no credible evidence tending to show that [Mother herself] initiated such contacts." (*Id*.).

**{¶ 19}** The trial court did recognize that Father had moved without giving Mother his new address or phone number. It also acknowledged Mother's stress from her physical abuse by K.Q. and from having to care for an infant child. The trial court opined that these two issues established "facially justifiable cause for her failure to contact R.L.H." (*Id*. at 6).  The trial court proceeded to find, however, that the adoption petitioner, L.H., had proven by clear and convincing evidence that these "facially justifiable" excuses for a lack of contact were "illusory." The trial court reasoned:

> With respect to [Mother's] first justification, the evidence showed that [K.Q.] assaulted [Mother] on April 23, 2011. From April 24, 2011 until July 28, 2011, however, [Mother] continued to exercise parenting time with R.L.H. This tends to undermine [Mother's] claim that the stress of the assault precluded her from providing more than de minimis contact with R.L.H. between October 1, 2011 and October 2, 2012. Moreover, even assuming that [Mother's] stress and commitment to counseling precluded her exercise of parenting time during the relevant time period, no evidence was presented that showed that such stress and commitment precluded [Mother] from contacting R.L.H. by perhaps less stressful means, such as telephone, letter, or card. Accordingly, the Court finds that [L.H.] has shown by clear and convincing evidence that [Mother's] first justification is illusory.
>
> With respect to [Mother's] second justification, the evidence showed that prior to [Mother's] suspension of supervised parenting time, [Father] drove R.L.H. to each and every scheduled visitation at Erma's House. The evidence further

showed that [Mother], and not [Father], canceled several scheduled visits and chose to suspend visitation at Erma's House. Finally, the evidence showed that [Mother] chose not to respond to a letter from Erma's House advising her that her case would be closed in the absence of a response. There was no evidence showing that [Father] in any way interfered with or discouraged [Mother's] efforts to respond to the letter, or that he would have interfered with or discouraged the reinstitution of supervised parenting time at Erma's House.

Moreover, the evidence showed that [Father] did not substantially interfere with or discourage [Mother's] efforts to contact R.L.H. after Erma's House closed the case. The evidence showed that [Father] relocated and changed his telephone without notifying [Mother]. The evidence also showed, however, that in May or June, 2011, [Mother] spoke with [Father] and did not ask for his contact information. This was consistent with [Mother's] practice of initiating contact with [Father] through [R.L.H.'s paternal grandmother]. [Father's] relocation and change of telephone number did not impact this practice, as [the paternal grandmother] maintained the same address and telephone number. The evidence showed, however, that [Mother] did not contact [the paternal grandmother] during the relevant time period.

Further, even assuming that [Mother] believed that it was necessary or desirable to break with her previous practice and contact [Father] directly, the evidence showed that she made no effort to do so. [Paternal grandmother] testified that she last spoke with [Mother] in June, 2011, and that she last spoke with

[maternal grandmother] in January, 2012. [Father], [L.H.], and [paternal grandmother] each testified that neither [Father] nor [L.H.] ever directed [paternal grandmother] to withhold [Father's] contact information from [Mother] or [maternal grandmother]. [Paternal grandmother] testified, however, that neither [Mother] nor [maternal grandmother] asked her for [Father's] contact information. Thus, the evidence showed that, although [Mother] likely could have obtained [Father's] contact information with minimum effort, she made no effort to do so. In a similar vein, to the extent that [Mother] believed that such effort would have been futile, [Mother] could have filed a motion in the Juvenile Court, much the same as the motion that she filed pro se in 2010, but did not do so. In light of the foregoing, the Court finds that [L.H.] has shown by clear and convincing evidence that [Mother's] second justification is illusory.

(Doc. #29 at 6-8).

{¶ 20} By characterizing Mother's proposed "facially justifiable causes" for non-contact with R.L.H. "illusory," the trial court essentially found that adoption-petitioner L.H. had proven, by clear and convincing evidence, that the alleged causes were not the real reasons for Mother's failure to have contact. *See*, *e.g.*, Cambridge Dictionaries Online, *illusory*, http://dictionary.cambridge.org/us/dictionary/british/illusory (defining "illusory" to mean "not real and based on illusion"); Dictionary.com, *illusory* http://dictionary.reference.com/browse/illusory (defining "illusory" to mean "deceptive," "misleading," or "unreal" and identifying synonyms including "fallacious," "specious," and "false." ).

**{¶ 21}** The manifest weight of the evidence supports the trial court's finding that Mother's "facially justifiable" reasons for not contacting R.L.H. were illusory or not the real reasons. Although Mother testified to being stressed after her April 2011 assault, she permanently separated from her abuser at that time and continued exercising parenting time at Erma's House through July 2011. She then voluntarily stopped the visits and did not seek to reinstate them until *after* L.H. filed for adoption and the relevant one-year period had expired. Under these circumstances, we cannot say the trial court's finding is against the weight of the evidence.

**{¶ 22}** The potential substantial interference by Father with Mother's contact with R.L.H. involved him moving without providing her his new address or phone number. Although such actions can constitute substantial interference, the weight of the evidence supports the trial court's finding that they did not here. Notably, the trial court found that the established practice between Mother and Father was for her to initiate contact with him by going through an intermediary, typically R.L.H.'s paternal grandmother. (Doc. #29 at 7-8). The trial court also found that paternal grandmother's address and phone number had remained constant before, during, and after the relevant time period. Despite this fact, the trial court found that Mother had not contacted paternal grandmother during the relevant time. (*Id*. at 3, 8). As noted above, the trial court rejected as "not credible" testimony that Mother and others had attempted to establish contact with R.L.H. on her behalf. (*Id*. at 5-6). Under similar circumstances, this court has found that moving without providing contact information may not constitute justifiable cause for non-contact with a child where the non-custodial parent can reach the custodial parent through a third-party relative but declines to do so. *In re Adoption of T.M.P.*, 2d Dist. Champaign No. 2003 CA 1, 2003-Ohio-2404, ¶ 12-13, 21.

**{¶ 23}** Based on the hearing testimony and the trial court's findings of fact, the record supports the trial court's determination that L.H. proved, by clear and convincing evidence, that Mother failed without justifiable cause to have more than de minimis contact with her daughter for at least one year immediately preceding the adoption petition. In reaching this conclusion, we note that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." *In re B.A.H.*, 2012-Ohio-4441, at ¶ 21. "'In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment and an order for a new trial.'" *Id.*, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29. Here we cannot say the trial court's judgment is against the weight of the evidence. Although this conclusion effectively resolves the case, we turn now to Mother's specific assignments of error, insofar as they are not subsumed in what we have decided above.

**{¶ 24}** In her first assignment of error, Mother contends generally that "the trial court erred in finding that [her] consent was not required * * *." In support, she claims the trial court's decision is against the weight of the evidence. She also cites her alleged attempted contact with her daughter, Father's alleged interference, her abusive relationship with K.Q., Father's address and phone number changes, and her justifiable-cause arguments. Having examined the first assignment of error, we find nothing therein that we did not fully address in our analysis above. Accordingly, the first assignment of error is overruled.

**{¶ 25}** Mother's second assignment of error challenges the trial court's finding that she

failed to contact R.L.H. during the relevant one-year time period. The substance of her argument, however, actually does not dispute the fact of actual lack of contact. Instead, she asserts that there were "numerous *attempted contacts* by Mother and Mother's family" that were rebuffed by "Father's continued and concentrated efforts to interfere with Mother's parenting time." (Emphasis added.) (Appellant's brief at 6). Mother further argues that she and her family "made multiple and consistent attempts to contact and exercise parenting time with the minor child." (*Id.* at 7). In its ruling, however, the trial court found the evidence Mother presented on this issue "not credible." (Doc. #29 at 5-6). The trial court concluded that the efforts at contact, if any existed at all, were de minimis. (*Id.* at 6). The trial court was entitled to assess the credibility of the witnesses, and its finding on this issue is not against the manifest weight of the evidence.

{¶ 26} Under her second assignment of error, Mother also complains about Father moving without providing his address. As noted above, however, Mother and her family knew how to establish contact through paternal grandmother. Despite that fact, Father presented evidence that they did not try to do so. (*See*, *e.g.*, Hearing Tr. at 42-43, 46-50, 72). As the trier of fact, the trial court was entitled to credit this evidence. Mother additionally claims that she paid her court-ordered child support. But that issue is not material in a failure-to-contact case. Mother also claims that a card for R.L.H. was returned and that Father and his family threatened to call the police if attempts at contact continued. We note, however, that the card allegedly was sent by the maternal grandmother, not Mother. (Hearing Tr. at 84). Maternal grandmother also mentioned receiving threats from someone that the police would be called if she continued trying to establish contact. (*Id.* at 87). Father presented contrary evidence, however, that no card ever was received and that neither he nor anyone in his family ever threatened to call the police. (*Id.* at 24,

29, 39, 48-49). Again, we defer to the trial court to resolve these evidentiary disputes. The second assignment of error is overruled.

{¶ 27}   Mother's third assignment of error claims the trial court erroneously shifted the burden of proof by requiring *her* to establish "justifiable cause" by clear and convincing evidence. This argument lacks merit for at least three reasons. First, the trial court expressly recognized that once an adoption petitioner establishes, by clear and convincing evidence, a lack of contact and a lack of justifiable cause, the burden of production shifts to the parent to show some facially justifiable cause. (Doc. #29 at 4). The trial court also recognized that the burden of proof remains with the adoption petitioner, even where the parent makes some facial showing. (*Id*. at 5). The trial court's approach is consistent with this court's case law. *See*, *e.g., In re R.M.Z.*, 2d Dist. Montgomery No. 23511, 2009-Ohio-5627, ¶ 11. Second, to the extent that the trial court imposed a burden of production on Mother, it found that she satisfied it. (Doc. #29 at 6). Third, the trial court placed the ultimate burden of proof on L.H. to establish, by clear and convincing evidence, that Mother's facial showing was "illusory" or not real, and that Mother had failed without justifiable cause to have more than de minimis contact with R.L.H. (*Id*. at 6-8). Having reviewed the record, we see no improper burden shifting. The third assignment of error is overruled.

{¶ 28}   In her fourth and fifth assignments of error, Mother quarrels with the trial court's use of the word "illusory" to describe her claimed "facially justifiable cause" for not contacting R.L.H.

{¶ 29}   As set forth above, the trial court first required the adoption petitioner, L.H., to establish Mother's non-contact with R.L.H. and a lack of justifiable cause. It then imposed on

Mother a burden of production to make some showing of a facially justifiable cause for her lack of contact. The trial court found that Mother met this burden, reasoning:

[Mother] claims that her failure was justified by both her post-traumatic stress disorder and the stress of being a single working mother of an infant and [Father's] significant interference with and discouragement of her efforts to communicate with R.L.H. In support, [Mother] presented evidence that showed that she was the victim of domestic violence on April 23, 2011. [Mother] also presented evidence that showed that [Father] relocated and changed his telephone number without providing her his new contact information. In light of the foregoing, the Court finds that [Mother] has shown a facially justifiable cause for her failure to contact R.L.H.

(Doc. #29 at 6).

{¶ 30} On appeal, Mother argues that the foregoing finding by the trial court should have ended the matter. Having presented some evidence of a "facially" justifiable reason for her non-contact, Mother reasons that the trial court's inquiry should have ended and her consent to the adoption should have been required. According to Mother, the trial court erred in proceeding to look behind her facially justifiable cause to find it "illusory."

{¶ 31} In finding that Mother had met her burden, however, the trial court simply recognized that significant stress and a custodial parent's relocation *can* justify a failure to contact a child. Therefore, the trial court required L.H. to prove, by clear and convincing evidence, that these proffered reasons did not constitute justifiable cause in this case. The remainder of the trial court's opinion appropriately explained why Mother's "facially" justifiable

cause did not qualify as justifiable cause in this case and why L.H. had carried her ultimate burden of proof on the issue. (Doc. #29 at 6-8).

{¶ 32} Mother criticizes the trial court for allowing L.H. to prove that her proffered reasons for not contacting R.L.H. were "illusory." She argues that this approach gave L.H. "a second bite at the apple." (Appellant's brief at 9). According to Mother, "[t]he effect of the illusory test is to shift the burden of going forward to the respondent parent to show that justifiable cause was 'good enough.'" (*Id*.). Mother further argues that the "illusory" test has been applied only a few times by other appellate districts in R.C. 3107.07 cases involving a failure to support rather than a failure to contact. Finally, she argues that her facially justifiable cause was not "illusory" in any event. (*Id*. at 11-14).

{¶ 33} We find Mother's arguments unpersuasive. We do not view the trial court's usage of the term "illusory," when referring to Mother's reasons given to justify lack of contact, as imposition of an "illusory test" as argued in briefing. The ultimate issue in this case was whether L.H. proved, by clear and convincing evidence, that Mother had failed without justifiable cause to have more than de minimis contact with R.L.H. for the requisite one-year period. It does not follow that L.H. could not carry this burden simply because Mother was able to articulate "facially" valid reasons for her non-contact. We see nothing wrong with allowing L.H. to prove, again by clear and convincing evidence, that Mother's "facially justifiable" reasons did not actually cause her non-contact, i.e., that such reasons were "illusory." Indeed, L.H. could not be expected to disprove the proffered reasons until after Mother articulated them. The Ohio Supreme Court has recognized this very point: "'*[I]t should be pointed out that the adopting parent has no legal duty to prove a negative. If the natural parent does not appear to go forward*

*with any evidence of justification*,'" the adopting parent need not attempt to refute the justification. (Emphasis sic) *Bovette*, 33 Ohio St.3d at 104, 515 N.Ed.2d 919, quoting *Masa*, 23 Ohio St.3d at 167, 492 N.Ed.2d 140.

{¶ 34} Numerous Ohio courts, including this one, have allowed an adoption petitioner to attempt to refute a parent's proffered facially justifiable cause for a lack of contact or support.[1] *See*, *e.g.*, *In re Adoption of A.M.B.*, 2d Dist. Montgomery No. 21973, 2007-Ohio-2584, ¶ 8-10 (affirming a judgment finding consent to adoption not required based on a lack of communication where the trial court allowed the adoption petitioner to refute the biological parent's proffered facially justifiable cause); *In re Adoption of S.B.D.*, 2d Dist. Miami No. 2006-CA-25, 2006-Ohio-5133, ¶ 33 ("In the present case, the trial court recognized and properly applied the foregoing burdens. It first found that Jennifer Denson had proven Mertz's failure to communicate by clear and convincing evidence. It then found that Mertz had come forward with evidence of some justifiable cause for her failure to communicate. The trial court next recognized that Denson bore the ultimate burden to prove, again by clear and convincing evidence, that Mertz's failure to communicate was without justifiable cause. Finally, the trial court concluded that Denson had met this burden."); *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 13; *In re D.R.*, 7th Dist. Belmont No. 11 BE 11, 2011-Ohio-4755, ¶ 19 ("If the natural parent provides a facially justifiable cause, then the burden of going forward with the evidence returns to the adoption petitioner to establish that alleged cause is not justifiable cause for failing to provide support or communication."); *In re K.R.E., K.E. & A.E.*, 9th Dist. Lorain

---

[1] Although Mother attempts to distinguish the no-contact and no-support cases, R.C. 3107.07(A) requires proof of either one. Due to the similar nature of the findings required, we see no reason why different standards would apply to no-contact and no-support cases and no reason why case law addressing no-support cases would not be equally applicable to no-contact cases.

No. 06CA008891, 2006-Ohio-4815, ¶ 20; *In re Adoption of Cutright*, 4th Dist. Ross No. 03CA2696, 2003-Ohio-3795, ¶ 13-14.[2]

{¶ 35} Based on the foregoing authority, we find no error in the trial court allowing L.H. to prove that Mother's proffered reasons for not contacting R.L.H. were "illusory." For the reasons set forth more fully in our substantive analysis above, we also reject Mother's argument that her facially justifiable cause was not "illusory." As we explained above, the manifest weight of the evidence supports the trial court's finding that Mother's facially justifiable reasons for not contacting R.L.H. were illusory or not the real reasons. Accordingly, Mother's fourth and fifth assignments of error are overruled.

{¶ 36} The judgment of the Montgomery County Probate Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, J., concurring:

{¶ 37} The court's use of the word "illusory" is interpreted by the Appellant as suggesting that she demonstrated justifiable cause, but that the court then found that this was not "good enough."

{¶ 38} I agree that there is no middle ground - one is either pregnant or not, a number is either odd or even - there is either justifiable cause or there is not.

{¶ 39} In contested permanent custody or adoption cases where the stakes are so high, a trial court may often rightfully go into a more detailed explanation of its rationale in order for the parties to appreciate that their concerns and arguments were heard and weighed. Here, the court

---

[2] Although this list of case law is not exhaustive, additional citations to such a well-established principle would serve no purpose.

found that the petitioner had met her burden as to lack of contact and lack of justifiable cause.

. . . . . . . . . .

Copies mailed to:

Mark D. Webb
David L. McNamee
Hon. Alice O. McCollum