[Cite as *In re Adoption of S.M.H.*, 2014-Ohio-45.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

IN RE: ADOPTION OF S.M.H. :

: C.A. CASE NO. 2013 CA 59

: T.C. NO. 10286SP-13-15

: (Civil appeal from Common
   Pleas Court, Probate Division)

:

:

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____10th____ day of ____January____, 2014.

. . . . . . . . . .

RONALD P. KELLER, Atty. Reg. No. 0016176, 85 W. Main Street, Xenia, Ohio 45385
        Attorney for Appellant

DAVID S. PETERSON, Atty. Reg. No. 0007836, 87 S. Progress Drive, Xenia, Ohio 45385
        Attorney for Appellee

. . . . . . . . . .

FROELICH, P.J.

{¶ 1} R.S., Jr. ("R.S.") the biological father of S.M.H, appeals from a judgment of the Greene County Court of Common Pleas, Probate Division, which found that his consent to S.M.H.'s adoption by G.H. was not required. The court's conclusion was

based on its finding that R.S. had failed to have contact with the child, without justifiable cause, for more than one year immediately preceding the filing of the adoption petition.

{¶ 2} For the following reasons, the judgment of the probate court will be affirmed.

{¶ 3} R.C. 3107.07(A) provides, in pertinent part, that consent to adoption is not required of the parent of a minor "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *."

{¶ 4} Probate courts undertake a two-step analysis when applying R.C. 3107.07(A). The first step involves deciding a factual question or questions: whether the parent had willfully failed to provide for the support and maintenance of a minor child or had failed to have more than de minimis contact with the child. Probate courts have broad discretion over these factual determinations, which will not be disturbed absent an abuse of discretion. *In re Adoption of J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 25-28, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21-23; *In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 12. If a probate court finds a failure to support or contact the child, the court's second step is to determine whether justifiable cause for the failure has been proven by clear and convincing evidence. *In re J.R.H.* at ¶ 27. The question of whether justifiable cause for such a failure has been

proven in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. *Id.*, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus.

**{¶ 5}** The child, S.M.H. was born in 2002 and was eleven years old when the petition for adoption was filed. She had lived her entire life with her mother, F.H., who married G.H. in 2008, and had no contact with R.S. after four months of age. In early 2003, R.S. was convicted of menacing by stalking against the child's mother; as part of his sentence, the Xenia Municipal Court ordered him to have no contact with the child's mother for ten years. Around the same time, the mother also obtained a civil protection order for five years in the Greene County Court of Common Pleas,[1] of which R.S. was also aware. These facts were undisputed.

**{¶ 6}** The petition for adoption was filed in February 2013 and alleged that R.S. had both failed to support and failed to contact his child for at least one year. However, the parties and a child support enforcement agency employee testified that child support had been terminated, at the request of the mother, in February 2003. R.S. was aware of the mother's request and, although he claimed that he had wanted to support his child, he did not claim to have objected to the termination of his support obligation. The mother's request was motivated by her concern that her address would be available to R.S. through the child support documents. Based on this testimony, the probate court found that R.S.'s failure to support the child had been justified. This finding is not at issue in this appeal.

---

[1] Neither party presented a copy of the civil protection order.

{¶ 7}    R.S. testified that, as he understood it, the municipal court had ordered him not to contact the child *and* the child's mother for ten years.  R.S. offered a copy of the Xenia Municipal Court's docket at the hearing (Exhibit A), which indicated that the protection order had applied only to the mother; R.S. did not provide any documentation to support his alleged understanding that the order had applied to both mother and child, nor did he consult with an attorney or seek clarification from a court about the order or its ramifications.

{¶ 8}    Although F.H. testified that she had asked to terminate child support in 2003 because she did not want to provide her address to R.S. after he had menaced her, she and G.H. further testified that they had known R.S. since attending high school together, that they still had mutual friends, and that they attended the same church as F.H. had  attended when she and R.S. were together.  F.H. also testified that her mother's phone number and G.H.'s parents' phone number were the same as they had been when the parties were in high school, and that the parents had lived in the same places until very recently.  G.H. testified that he was listed in the White Pages.  F.H. and the church's pastor testified that her employment by the church was stated on the church's website, along with contact information, and that this listing could be obtained through a Google search.  F.H. expressed her opinion that R.S. would have been able to find her address through mutual friends, her church, or through the Internet if he had wanted to do so.  G.H.'s mother also testified that she had run into R.S. at a grocery store in 2009, at which time they had discussed her son's marriage to the child's mother.

{¶ 9}    R.S. asserted that, many years earlier, the child's mother had refused to let

him see the child because she had been angry at his unwillingness to continue a sexual relationship with her. He testified that he had not known where his child was and, additionally, that he had believed he was prohibited from contacting the child and her mother through February 2013 (ten years from the imposition of the municipal court's order). He claimed to have looked for the mother and child online, to no avail, and stated that he went to the probate court when the protection order expired to learn whether the child had been adopted; this is how he claimed to have learned of the adoption proceedings, although a notice had also been published about them. R.S. denied that he had known about the mother's marriage to G.H. from G.H.'s mother or any of their mutual friends, with whom he had lost contact. He further stated that he believed that the municipal court's order had prevented him from having others look for the mother or child, from going to court to seek custody, and from taking any other steps toward involvement with the child.

{¶ 10} On rebuttal, F.H. denied that she had ever threatened to keep R.S. from his child and denied that she had desired to continue a sexual relationship with him at the time of their breakup.

{¶ 11} Following the hearing, the magistrate found that R.S. lacked justifiable cause for his failure to have contact with the child for at least one year prior to the filing of the petition and recommended that the petition for adoption be granted. R.S. filed objections to the magistrate's decision.

{¶ 12} On September 20, 2013, the probate court overruled R.S.'s objections, agreed with the magistrate's conclusions, and issued a Final Decree of Adoption. The court stated:

* * * [R.S.] contends that his lack of contact was justifiable because he did not know where his daughter lived and that he was afraid to search because he was subject to protection orders for domestic violence and menacing by stalking. The Magistrate did not find [R.S.'s] testimony credible. The Court agrees.

First and foremost, [R.S.] mistakenly assumed that the protection orders precluded him from contacting his child's mother and his child. It is clear on the face of the orders that neither of them applied to his daughter. Further, the protection orders were a result of [R.S.'s] own conduct, not from any intentional efforts by the child's mother to interfere with parental rights. He cannot use his own misconduct to justify his decade-long absence from his daughter's life. Despite this, [R.S.] could have easily pursued visitation rights through Juvenile Court or through modification of the protection orders. He failed to make any attempt to do so. The child's mother testified that she would not have objected to supervised visitation.

[R.S.'s] excuse that he did not know where his daughter lived is also not plausible, either. He, the child's mother and the Petitioner all knew each other from high school and had many common friends. They all lived in Xenia, Ohio - a small town with a population of only about 26,000. Although the child's mother did not flaunt her address and phone number, nor did she actively try to hide it from [R.S.] or anyone else. [R.S.'s] testimony regarding his justification for not contacting his daughter for over 10 years

simply is not credible.   The Petitioner's evidence is.

{¶ 13}   On appeal, R.S. raises one assignment of error, in which he contends that the probate court's judgment was not supported by clear and convincing evidence.

{¶ 14}   The parties did not dispute that R.S. had failed to have any contact with the child for many years.   Thus, the probate court did not abuse its discretion in finding that R.S. had failed to have contact with the child.   R.S. contends, however, that the court's conclusion as to whether the lack of contact was justified was not supported by clear and convincing evidence.

{¶ 15}   F.H.'s testimony and the copy of the Xenia Municipal Court's docket   that R.S. himself presented to the court as an exhibit indicated that the court's order applied only to the mother, not to the child.   (The municipal court's judgment was not presented as an exhibit.)   Thus, the court's conclusion that the order, on its face, did not prevent contact with the child was not against the weight of the evidence.   It also reasonably concluded that R.S.'s assertion as to his understanding of the court's order lacked credibility.   The probate court observed that R.S. did not attempt to obtain visitation by seeking modification of the court's order or by seeking visitation with his child through other court proceedings, as one might reasonably expect him to do if he sought to form or sustain a relationship with the child.   The court's finding that R.S.'s explanation for his inaction did not show justifiable cause for his failure to contact the child, and thus that R.S.'s consent to the adoption was not required, was supported by clear and convincing evidence.

{¶ 16}   The assignment of error is overruled.

{¶ 17}   The judgment of the probate court will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Ronald P. Keller
David S. Peterson
Hon. Thomas M. O'Diam