[Cite as *In re Adoption of K.C.*, 2014-Ohio-3985.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

IN RE:  ADOPTION OF K.C.           CASE NO.  8-14-03

[ANDREW FISHER - APPELLANT].          O P I N I O N

Appeal from Logan County Family Court
Probate Division
Trial Court No. 12 AD 21

Judgment Affirmed

Date of Decision:  September 15, 2014

APPEARANCES:

     *Jeff Ratliff*  for Appellant

     *Bridget Hawkins*  for Appellee

**SHAW, J.**

{¶1} Respondent-appellant, Andrew F. ("Andrew") appeals the February 20, 2014 Judgment of the Logan County Family Court, Probate Division, finding that his consent to the adoption of his son, K.C., was not required pursuant to R.C. 3107.07(A). Specifically, the trial court found that Andrew had failed without justifiable cause to provide more than de minimis contact with his son for at least one year immediately preceding the adoption petition filed by petitioner-appellee, Scott C. ("Scott"), the husband of K.C.'s mother, Jordan C. ("Jordan"), who has legal custody of K.C.

{¶2} Jordan and Andrew were in a relationship when Jordan became pregnant with K.C. The relationship ended early into the pregnancy and Jordan met Scott shortly thereafter. K.C. was born in December of 2010. Scott was present at the time of the birth and K.C. was given Scott's last name.[1] Andrew visited the hospital shortly after K.C. was born, but did not sign the birth certificate.

{¶3} K.C. lived with Jordan and Scott. Andrew's paternity of K.C. was legally established by a child support order requiring Andrew to pay monthly

---

[1] Jordan and Scott married in May of 2011 and were not married at the time of K.C.'s birth.

support through the Logan County Child Support Enforcement Agency.[2]  The last contact Andrew had with K.C. occurred in March of 2011, when K.C. was three months old and Jordan had arranged for Andrew to visit with K.C. in a Wal-Mart parking lot.

{¶4} On December 12, 2012, Scott filed a petition to adopt K.C. and alleged that Andrew's consent was not required because Andrew "has failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition * * *." (Doc. No. 1 at 2).

{¶5} The record indicates that Andrew received the petition on December 26, 2012, via certified mail.

{¶6} On February 8, 2013, Andrew filed his objection to the petition for adoption.  As grounds for his objection, Andrew stated that he "has not failed to communicate with or try to see his son.  He has attempted and has been frustrated in his attempts by the mother." (Doc. No. 26).

{¶7} On March 28, 2013, the trial court conducted a final hearing on the matter.  Prior to hearing the evidence, the trial court issued a ruling limiting the scope of the hearing to the de minimis contact provision in R.C. 3107.07(A)

---

[2] The parties dispute how the child support proceedings were initiated.  Jordan maintained that the Ohio Department of Job and Family Services sought to establish Andrew's child support because she received government benefits for K.C.  Andrew claimed he initiated the proceedings because he wanted to support his son.  The record from the child support case is not part of the record before this Court.

thereby overruling Andrew's request to present evidence attacking the marriage of Scott and Jordan. Each party then presented testimony in support of their positions regarding the de minimis contact provision.

{¶8} Scott testified that he first met Jordan when she was two months pregnant with K.C. Scott recalled that the relationship quickly advanced and the two soon lived together in Scott's home in West Mansfield, Ohio, where K.C. has lived since his birth. Scott stated that he was at the hospital when K.C. was born and Jordan chose to use his last name on K.C.'s birth certificate because they planned to marry and thought it was in K.C.'s best interest. Scott acknowledged that Andrew's paternity of K.C. was legally established shortly after K.C.'s birth and that Andrew paid child support. Scott testified that the last contact Andrew had with K.C. was in March of 2011 when Jordan took K.C. to see Andrew in a Wal-Mart parking lot. Scott stated that Andrew never sent birthday or Christmas presents to K.C. He recalled that Andrew attempted to contact Jordan via Facebook on November 30, 2012 and December 1, 2012—two weeks prior to him filing his petition to adopt K.C.—but that Andrew did not ask to see K.C. or ask about his well-being. Scott also testified that he had already contacted an attorney to initiate the adoption proceeding when Andrew sent the messages to Jordan on Facebook.

{¶9} Jordan testified that Andrew did not want to sign K.C.'s birth certificate. She stated that after K.C. was born there was a hearing held to establish Andrew's visitation with K.C. to which Andrew failed to appear. Jordan recalled the last time Andrew saw K.C. was in a Wal-Mart parking lot in March of 2011. She elaborated that she called Andrew to inform him that she would be there if he wanted to see his son. Jordan claimed that Andrew met them in the parking lot and visited for five to ten minutes before he stated he had better things to do and left. Jordan explained that up until that point she wanted K.C. to have a relationship with Andrew, but after that interaction she was skeptical of Andrew's commitment to K.C. Jordan testified that Andrew has never talked to K.C. on the phone, never called her to arrange visitation, nor has he sent presents or cards for birthdays or Christmas. Jordan recalled the next time she heard from Andrew was on November 30, 2012 and December 1, 2012 when he sent her a Facebook message. Jordan testified that in these messages Andrew did not ask to see K.C. However, she stated that if he had asked to see K.C. she would have refused because at that point Andrew had not "been there for two years." (Doc. No. 74 at 37). After receiving the messages, Jordan blocked Andrew from contacting her on Facebook.

{¶10} Jordan testified that she and K.C. have lived in the same residence since K.C.'s birth and insisted that Andrew knew where the house was located.

She claimed that since the encounter at Wal-Mart in March 2011, Andrew has not contacted her. She was adamant that Andrew could have communicated with K.C. because he knew her phone number, her email, her Facebook page as well as the contact information for her relatives.

{¶11} The next witness to testify in support of Scott's petition was Holly W., Jordan's mother. Holly testified that she and Andrew communicated through Facebook. She recalled that in the spring of 2011 she sent a message offering to help Andrew arrange visits with K.C., but Andrew never responded. She stated that in July of 2011 she again contacted Andrew through Facebook by sending him a picture of K.C. Holly corroborated Scott and Jordan's testimony regarding Andrew's lack of involvement in K.C.'s life the year preceding Scott filing the petition for adoption.

{¶12} Andrew testified that he was not at the hospital when K.C. was born because Jordan did not contact him until after the birth. He stated that when he first learned K.C. was born he immediately went to the hospital to see him. Andrew denied refusing to sign the birth certificate and claimed that Jordan never asked him to sign it.

{¶13} Andrew recalled the March 2011 incident when he met Jordan at a Wal-Mart parking lot and admitted that it was the last time he saw K.C. He disagreed with Jordan's characterization that he only stayed for five minutes

because he claimed he had something better to do. He accused Jordan of not allowing him to see K.C. and preventing him from fostering a relationship with his son. Andrew was insistent that he did not know where Jordan and K.C. lived to be able to send birthday and Christmas gifts. He also claimed that he constantly tried to contact Jordan through text messages to arrange visitations but she ignored him. He stated that he did not have any way to communicate with K.C. because Jordan changed her phone number in the summer of 2011, he did not have her email address, and she had blocked him from accessing her Facebook page.

{¶14} Andrew explained that he did not seek court-ordered visitation with K.C. because he became seriously ill in December of 2011 and was bedridden until April of 2012. He stated that he accrued a substantial amount of debt as a result of his illness and could not afford an attorney. He testified that he contacted Jordan through Facebook in November of 2012 because he wanted to reconnect with her so he could be in K.C.'s life. He explained that he did not explicitly ask to see K.C. because he knew Jordan's answer would be "no" and he wanted to take the initial steps to get along with Jordan.

{¶15} Andrew also presented the testimony of his brother, Mark, and two of his friends to corroborate his testimony regarding Jordan's denial of his visitation with K.C. However, these witnesses did not have personal knowledge

of any interaction between Andrew and Jordan during the year immediately preceding the filing of the petition for adoption.

{¶16} In addition to witness testimony, the parties also entered as exhibits copies of the Facebook conversations between Andrew and Jordan's mother in July of 2011 and Andrew and Jordan in November and December of 2012.

{¶17} On February 20, 2014, the trial court issued its decision on the matter and made the following findings:

> **The Court FINDS that an attempt by the Father to contact the child's Mother on Facebook on November 30, 2012 is di minimis [sic].**
>
> **The Court further FINDS the Mother's "unfriending" of the Father on Facebook on December 1, 2012 holds no substantive value.**
>
> **The Court further FINDS the Mother's answer "no" to the question on cross examination "had he ask [sic] to see his son, would you have let him" to be after the fact and of no value.**
>
> **The Court further FINDS the Father had numerous opportunities to contact his child. He knew the Maternal Grandmother. He could have used the Logan County Child Support Agency for information. The Mother and child had lived in the same residence in West Mansfield since the birth of the child. He also had legal avenues to pursue that he did not.**
>
> **Therefore, the Court FINDS pursuant to Ohio Revised Code Section 3107.07 by clear and convincing evidence that the Father/Parent has failed without justifiable cause to provide more than de minimis contact with the minor.**

(Doc. No. 54 at 2). The trial court then ordered that Andrew's consent was not required and approved Scott's petition to adopt K.C.

{¶18} Andrew now appeals, asserting the following assignments of error.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN ITS DETERMINATION THAT PETITIONER PROVED BY CLEAR AND CONVINCING EVIDENCE THAT FATHER-APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILD, SUCH THAT HIS CONSENT TO THE ADOPTION WAS NO LONGER NECESSARY WHERE CONFLICTING TESTIMONY WAS PROVIDED BY THE PETITIONER AND MOTHER AND EVIDENCE WAS PRESENTED BY FATHER-APPELLANT THAT (1) FATHER-APPELLANT WAS PREVENTED FROM SEEING THE CHILD BY THE MOTHER; (2) FATHER-APPELLANT DID NOT KNOW THE CURRENT ADDRESS OF THE MOTHER; AND (3) FATHER-APPELLANT SUFFERED FROM DEBILITATING ILLNESS FOR FOUR OF THE TWELVE MONTHS PRECEDING THE FILING OF THE PETITION FOR ADOPTION.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT'S DETERMINATION THAT FATHER-APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILD FOR A PERIOD OF ONE YEAR PRIOR TO THE FILING OF THE PETITION FOR ADOPTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE TRIAL COURT FOUND MOTHER'S TESTIMONY TO BE OF NO SUBSTANTIVE VALUE WHERE SHE TESTIFIED THAT (1) SHE HAD BLOCKED THE FATHER-APPELLANT ON FACEBOOK AND (2) HAD FATHER-APPELLANT ASKED TO SEE HIS SON, SHE WOULD NOT HAVE LET HIM.**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE HEARING ON THE PETITION FOR ADOPTION WAS SOLELY A HEARING ON THE CONTACT PROVISION OF O.R.C. § 3107.07(A) AND NOT ALLOWING THE FATHER-APPELLANT TO QUESTION THE MARRIAGE OF PETITIONER AND THE MOTHER.**

*First and Second Assignments of Error*

{¶19} In his first and second assignments of error, Andrew challenges the trial court's determination that his consent was not required to approve Scott's petition for adoption of K.C. because Andrew had failed without justifiable cause to provide more than de minimis contact with K.C.

{¶20} Ordinarily, the written consent of a minor child's natural parents is required prior to adoption, but R.C. 3107.07 provides exceptions to this requirement. Specifically, R.C. 3107.07 states:

**Consent to adoption is not required of any of the following:**

**(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *.**

{¶21} We note that R.C. 3107.07(A) is written in the disjunctive. Therefore, a failure without justifiable cause to provide *either* more than de

minimis contact with the minor *or* maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent. *See In re Adoption of A.H.*, 9th Dist. No. 12CA010312, 2013-Ohio-1600, ¶ 9, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304 (1980). Here, Scott's petition for adoption of K.C. specifically alleged that Andrew's consent was not required because Andrew "has failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition * * *." (Doc. No. 1 at 2). Accordingly, any argument Andrew advances on appeal regarding his payment of child support is not relevant to the issue of whether he failed to provide more than de minimis contact with K.C.

{¶22} We further note that the current version of R.C. 3107.07(A) became effective April 7, 2009. The prior version of the statute required a finding that the parent failed to "communicate" with the minor child for a period of one year. The Legislature amended the statute to require a finding that the parent failed to "provide more than de minimis contact" with the minor child for a period of one year. "By changing the standard from 'communicate,' which could imply a single contact, to 'more than de minimis contact,' which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child." *In re J.D.T.*, 7th Dist. Harrison No. 11 HA 10, 2012–Ohio–4537, ¶ 9.

{¶23} The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012–Ohio–236, ¶ 23. The first step involves deciding a factual question—in this case, whether the parent willfully had failed to provide more than de minimis contact with the minor child. *See In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, citing *M.B.* at ¶ 21. "A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *." *M.B.* at ¶ 25. In the second step, if a probate court finds a failure to provide more than de minimis contact, the court then determines the issue of whether there is justifiable cause for the failure. *Id.* at ¶ 23. A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *Id.* at ¶ 24; *In re Adoption of Masa*, 23 Ohio St.3d 163, paragraph two of the syllabus, (1986).

{¶24} "Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to [have more than de minimis contact] with the child during the requisite one-year period and that there was no justifiable cause for the failure of [contact]." *In re R.L.H.*, 2d

Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 9, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985). The burden of clear and convincing evidence "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, paragraph three of the syllabus (1954).

{¶25} With regard to the first step of the analysis, Andrew contends that the trial court erred in finding he failed to provide more than de minimis contact with K.C. In support of his position, Andrew points to his testimony at the final hearing in which he stated that he had tried on numerous occasions to text Jordan regarding visitation with K.C. but she ignored him. He also asserts that his Facebook messages to Jordan on November 30, 2012 and December 1, 2012, in which he attempted to reconnect with Jordan so he could be more involved in his son's life, are proof that he provided more than de minimis contact with K.C. Andrew maintains on appeal that the trial court did not give the appropriate weight to his testimony regarding his efforts to contact his son through Jordan.

{¶26} The record demonstrates that Jordan disputed Andrew's claims that he repeatedly sent her text messages asking to see K.C. To the contrary, Jordan

testified that prior to November 30, 2012, she had no communication with Andrew since March of 2011—the last time Andrew saw K.C. While both parties provided witness testimony to support their positions regarding Andrew's efforts to contact Jordan to see K.C.—or lack thereof—the issue was ultimately a credibility determination left to the sound discretion of the trial court. "A trial court is 'free to believe all, part, or none of the testimony of any witness who appears before it.' " *In re Adoption of M.C.*, 4th Dist. Jackson No. 11CA5, 2011-Ohio-6527, ¶ 19, quoting *Rogers v. Hill*, 124 Ohio App.3d 468, 470 (1998). As such, we do not find the trial court's determination that Andrew's contact with K.C. in the year preceding the filing of Scott's adoption petition was de minimis to be an abuse of discretion.

{¶27} Next, we review whether the trial court's finding that Andrew's de minimis contact lacked justifiable cause is against the manifest weight of the evidence. Andrew contends that justifiable cause existed because he repeatedly had attempted to contact K.C. but was unsuccessful due to Jordan's interference. Andrew also argues that the illness he suffered during the year preceding the adoption petition constituted a justifiable cause.

{¶28} With regard to his illness, Andrew testified that he first fell ill in December of 2011 and was bedridden until April of 2012. Andrew claims he accrued a significant amount of debt as a result of being unable to work and could

not afford to hire an attorney. However, Andrew provided no explanation for why he did not attempt to contact Jordan between April 2012 and November 2012. Moreover, even though Andrew testified that Jordan changed her phone number, there is nothing in the record to suggest that Andrew attempted to find Jordan's contact information between the time when he allegedly lost communication with Jordan in the summer of 2011 and when he became sick in December 2011. Notably, Scott entered as an exhibit a copy of Andrew's Facebook conversation with Holly, K.C.'s maternal grandmother, which took place in July of 2011. In this exchange, Andrew expressed a desire to be in K.C.'s life, but did not ask Holly for Jordan's address or her new phone number to contact K.C. There was also testimony that Andrew's grandparents lived next door to Jordan's grandparents further demonstrating that Andrew had multiple ways to learn of Jordan's contact information.

**{¶29}** In its ruling, the trial court specifically found that Andrew failed to seize upon various opportunities to facilitate his contact with K.C. The trial court highlighted the fact that Andrew had numerous resources at his disposal to acquire K.C.'s contact information, including Jordan's relatives and the Logan County CSEA. The trial court also observed that Andrew failed to pursue available legal avenues to secure his visitation with K.C.

{¶30} Based on the testimony at the final hearing and the trial court's findings of fact, we conclude that the record supports the trial court's determination that Scott proved by clear and convincing evidence that Andrew failed without justifiable cause to have more than de minimis contact with K.C. for at least a year immediately preceding the adoption petition. Nor are we persuaded that Jordan's act of blocking Andrew from her Facebook page on December 1, 2012, and her testimony after the fact that she would not have permitted Andrew to see K.C. were sufficient to alter in any way the trial court's evaluation of the evidence on this issue. Accordingly, we do not find that trial court's decision is against the manifest weight of the evidence. Andrew's first and second assignments of error are overruled.

*Third Assignment of Error*

{¶31} In his third assignment of error, Andrew argues that the trial court erred in limiting the scope of the final hearing to the de minimis contact provision in R.C. 3107.07(A). Specifically, Andrew asserts that the stability of Scott and Jordan's marriage is questionable based upon its short duration. Thus, Andrew claims he should have been permitted to present evidence attacking the marriage during the final hearing.

{¶32} In his objection to Scott's petition for adoption, Andrew cites Jordan's alleged interference with his contact with K.C. as the only basis for his

objection and does not mention the stability of Jordan and Scott's marriage.[3] In addition, Andrew provides no authority on appeal to support his contention that the stability of a petitioner's marriage is relevant to the de minimis contact provision in R.C. 3107.07(A). Notwithstanding this fact, we note that the record demonstrates an adoption assessor was appointed by the trial court and an investigation and home study were completed regarding Scott's parental fitness to adopt K.C. During this review, the adoption assessor had the opportunity to observe Jordan and Scott's marriage and found Scott was a suitable adoptive parent. Accordingly, we find Andrew's contention that he should have been able to present evidence attacking the marriage of Scott and Jordan to be without merit and his third assignment of error is overruled.

{¶33} For all these reasons the judgment of Logan County Family Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**

---

[3] We note that on appeal Scott argues that Andrew's consent is not required because he failed to file his objection within fourteen days of receiving notice of the petition for adoption. *See* R.C. 3107.07(K). The record indicates that Scott did not raise this issue at the trial court level. Moreover, the matter is moot given our resolution of the first and second assignments of error finding the trial court properly determined that Andrew's consent is not required pursuant to R.C. 3107.07(A).