[Cite as *In re Adoption of J.M.M.*, 2021-Ohio-775.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

IN RE:  THE ADOPTION OF:

    J.M.M.,

[THOMAS B. - APPELLANT]

CASE NO.  7-20-06

O P I N I O N

IN RE:  THE ADOPTION OF:

    J.N.M.,

[THOMAS B. - APPELLANT]

CASE NO.  7-20-07

O P I N I O N

**Appeals from Henry County Common Pleas Court**
**Probate Division**
**Trial Court Nos. 20195004 and 20195005**

**Judgments Affirmed**

**Date of Decision:  March 15, 2021**

**APPEARANCES:**

    *Todd B. Guelde* **for Appellant**

    *Jennifer N. Brown* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Petitioner-appellant, Thomas J. Brissey ("Thomas"), appeals the decision of the Henry County Court of Common Pleas, Probate Division, concluding that the consent of respondent-appellee, Daniel Lester Mohr ("Daniel"), to Thomas's petitions to adopt J.M.M. and J.N.M. (collectively "the twins") is necessary. For the reasons that follow, we affirm.

{¶2} J.M.M. and J.N.M. were born in 2009 to Daniel and Sandra Kay Comstock nka Skyelynn Sandra Kay Brissey ("Skyelynn").[1] (July 8, 2020 Tr. at 6); (Case No. 20195004, Doc. Nos. 1, 2, 4); (Case No. 20195005, Doc. No. 1, 2, 4). Daniel was listed as the father on both J.M.M.'s and J.N.M.'s birth certificates.[2] (Case No. 20195004, Doc. No. 3); (Case No. 20195005, Doc. No. 3). Although Daniel and Skyelynn had been married previously, they were not married at the time their twins were born.[3] (Case No. 20195004, Doc. No. 16); (Case No. 20195005, Doc. No. 15).

{¶3} Skyelynn and Thomas were married in 2018. (Case No. 20195004, Doc. Nos. 1, 16); (Case No. 20195005, Doc. Nos. 1, 15). On November 14, 2019, Thomas filed

---

[1] Skyelynn is aka Sandra Kay Russell, Skyelynn Sandra-Kay Russell, Sandra Kay Brissey, and Skylar Sandra Kay Brissey; Daniel referenced Skyelynn as "Sandy" in his text messages and throughout his testimony. (July 8, 2020 Tr. at 4, 13-14); (Case No. 20195004, Doc. Nos. 1, 2, 16); (Case No. 20195005, Doc. Nos. 1, 2, 15).

[2] The twins have a whole-blood sibling (Danny age 26) born to Daniel and Skyelynn. (July 8, 2020 Tr. at 37-38, 48); (Case No. 20195004, Doc. No. 16); (Case No. 20195005, Doc. No. 15).

[3] Notably, Skyelynn was married to Richard Comstock Jr. ("Richard"), her third former spouse, when the twins were born. (July 8, 2020 Tr. at 48-49); (Case No. 20195004, Doc. No. 16); (Case No. 20195005, Doc. No. 15). Because the trial court's record does not contain a divorce decree or information related to whether the establishment of paternity was rebutted by Daniel under R.C. 3111.03, we cannot glean from the record whether Richard should have been served in the instant action (as the presumptive-natural father), and whether his consent to adopt may be have been necessitated under R.C. 3107.07.

petitions to adopt J.M.M. and J.N.M. in the trial court.  (Case No. 20195004, Doc. No. 1); (Case No. 20195005, Doc. No. 1).  In his petitions, Thomas asserts that Daniel's consent to the adoptions is not necessary because he "* * * has failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition or the placement of the minor in the home of the petitioner."  (Case No. 20195004, Doc. No. 1); (Case No. 20195005, Doc. No. 1).  Skyelynn consented to Thomas's adoption of the children on November 14, 2019.  (Case No. 20195004, Doc. No. 1); (Case No. 20195005, Doc. No. 1).  The one-year "look back" period as to Daniel's contact with the children at issue in these adoptions is November 15, 2018 to November 14, 2019.

{¶4} On January 29, 2020, Daniel filed *pro se* letters objecting to the adoptions on the basis that he had been denied access to the children for a 12-month period.[4]  (Case No. 20195004, Doc. No. 15); (Case No. 20195005, Doc. No. 14).  Later, Daniel (when represented by counsel) filed objections to the petitions and a denial of consent abandonment denying the allegations in Thomas's petitions.  (Case No. 20195004, Doc. Nos. 20, 23); (Case No. 20195005, Doc. Nos. 18, 21).  The trial court rescheduled the matter for a "consent not required" hearing on July 8, 2020 to give Daniel's counsel time

---

[4] Daniel was incarcerated at the Corrections Center of Northwest Ohio when the adoption petitions were filed.  (Case No. 20195004, Doc. Nos. 15, 16, 21, 28); (Case No. 20195005, Doc. No. 14, 15, 19, 26).

to prepare.[5]  (Case No. 20195004, Doc. Nos. 22, 23, 24, 25, 26, 27); (Case No. 20195005, Doc. No. 22, 23, 24, 25).

{¶5} After conducting the "consent not required" hearing, the trial court issued an order requiring the parties to provide proposed findings of fact and applicable case law, which the parties timely filed.  (July 8, 2020 Tr. at 62-63); (Case No. 20195004, Doc. Nos. 30, 31, 32, 33); (Case No. 20195005, Doc. Nos. 28, 29, 30, 31).  Thereafter, trial court filed its entry on August 14, 2020 finding that justifiable cause exists for Daniel's failure to provide more than de minimis contact with the twins and ordered that Daniel's consent was required for the adoptions to proceed.  (Case No. 20195004, Doc. No. 34); (Case No. 20195005, Doc. No. 32).

{¶6} Thomas filed his notice of appeal in each case on September 11, 2020, and we have consolidated these cases for purposes of our review.  (Case No. 20195004, Doc. No. 35); (Case No. 7-20-06, JE Sept. 28, 2020); (Case No. 20195005, Doc. No. 33); (Case No. 7-20-07, JE Sept. 28, 2020).  He raises one assignment of error in each appeal.

### Assignment of Error

**The Probate Court's Decision That Appellee's Consent To Adoption Is Required Because Appellee Had Justifiable Cause For The Failure To Provide More Than De Minimis Contact With The Minor Children Is Against The Manifest Weight Of The Evidence.**

---

[5] Daniel was not permitted to appear in person as a result of the Covid-19 pandemic; nevertheless, he appeared via video conference from the Ohio Department of Rehabilitation and Correction Correctional Reception Center in Orient, Ohio.  (July 8, 2020 Tr. at 2, 48); (Case No. 20195004, Doc. No. 28); (Case No. 20195005, Doc. No. 26).

{¶7} In his sole assignment of error, Thomas argues The trial court erred by determining that Daniel's consent to the adoptions is required. Specifically, Thomas argues that the trial court erred by concluding that Daniel had justifiable cause for failing to provide more than de minimis contact with his twins for one year immediately preceding the filing of the adoption petitions, and that such determination is against the manifest weight of the evidence.

*Standard of Review*

{¶8} "'Ordinarily, the written consent of a minor child's natural parents is required prior to adoption, but R.C. 3107.07 provides exceptions to this requirement.'" *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 23, quoting *In re Adoption of K.C.*, 3d Dist. Logan No. 8-14-03, 2014-Ohio-3985, ¶ 20. Specifically, R.C. 3107.07 states:

> {¶9} Consent to adoption is not required of any of the following:
>
> (A)   A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

R.C. 3107.07(A). "'R.C. 3107.07(A) is written in the disjunctive.'" *In re Adoption of H.R.* at ¶ 23, quoting *In re Adoption of K.C.* at ¶ 21. "'Therefore, a failure without justifiable cause to provide *either* more than de minimis contact with the minor *or* maintenance and

support for the one-year time period is sufficient to obviate the need for a parent's consent.'" (Emphasis sic.) *Id.*, quoting *In re Adoption of K.C.* at ¶ 21, citing *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶10} "Because cases such as this one may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to provide more than de minimis contact with the minor or failed to provide for the maintenance and support of the minor during the requisite one-year period and that there was no justifiable cause for the failure." *Id.* at ¶ 24, citing *In re Adoption of K.C.* at ¶ 24, citing *In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 9. "'"Once the petitioner has established this failure, the burden of going forward shifts to the parent to show some facially justifiable cause for the failure. * * * The burden of proof, however, remains with the petitioner."'" *Id.*, quoting *In re R.L.H.* at ¶ 9, quoting *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 10.

> 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'

*Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus, and citing *In re Adoption of K.C.* at ¶ 24.

*Analysis*

-6-

{¶11} "'The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A).'" *Id.* at ¶ 25, quoting *In re Adoption of K.C.* at ¶ 23, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23. "The first step involves deciding a factual question—in this case, whether the parent failed to provide more than de minimis contact with the minor or failed to provide for the maintenance and support of the minor for a period of at least one year immediately preceding the filing of the adoption petition." *Id.*, citing *In re Adoption of K.C.* at ¶ 23, citing *In re R.L.H.* at ¶ 12, citing *In re Adoption of M.B.* at ¶ 23. *See also In re Adoption of S.J.M.H.*, 1st Dist. Hamilton No. C-130683, 2014-Ohio-3565, ¶ 29. "'"A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *."'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 23, quoting *In re Adoption of M.B.* at ¶ 25. *See also In re Adoption of S.J.M.H.* at ¶ 29. "In the second step of the analysis, if a probate court finds the parent failed to provide more than de minimis contact or failed to provide for the maintenance and support of the minor, the court then determines 'whether justifiable cause for the failure has been proved by clear and convincing evidence.'" *Id.*, quoting *In re Adoption of M.B.* at ¶ 23. *See also In re Adoption of K.C.* at ¶ 23. "'A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the

evidence.'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 23, citing *In re Adoption of M.B.* at ¶ 24 and *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph two of the syllabus.

> 'In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment and an order for a new trial.'

*In re Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265, ¶ 11, citing *In re Adoption of E.E.R.K.*, 2d Dist. Miami No. 2013 CA 35, 2014-Ohio-1276, ¶ 18, quoting *Stegall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

{¶12} We begin by addressing the first step of the analysis and applying the appropriate standard of review—abuse of discretion. Our review of the record reveals that there was conflicting evidence regarding whether Daniel had contact with the twins during the "look back" period. (July 8, 2020 Tr. at 24-25, 36-38, 40-41, 44, 52, 54, 61-62). Indeed, the trial court determined, "[w]hile the issue of whether the Christmas present was delivered in 2016 or 2018 marked, 'from Dad' is disputed, the Court would not find Skyelynn['s ] testimony on rebuttal 'clear and convincing' as to when the present was delivered." (*Id.* at 61-62); (Case No. 20195004, Doc. No. 34); (Case No. 20195005, Doc. No. 32). According to the trial court:

> [w]hether the Christmas gift was delivered in December of 2016 or 2018, there would still remain the need to view the second prong, whether de minimis contact was justifiable by the interference of the other parent. The Court would go back to the June 29, 2018 meeting between Skyelynn [] and Daniel [] where she asked him to consent to adopt and he refused. She

subsequently blocked him on Facebook and started to limit the [twins] contact with Louise Mohr [their paternal grandmother]. Additionally, it was only on rebuttal that Skyelynn [] testified that she now remembered that the gifts marked 'from Dad' were delivered in 2016 and not 2018.

(Case No. 20195004, Doc. No. 34); (Case No. 20195005, Doc. No. 32). Thus, in our review of the record, we conclude that the trial court *implicitly* found that Thomas did not meet his burden of proof by clear and convincing evidence as to the first step of the analysis. Nevertheless, even if we were to assume without deciding that Daniel failed to provide more than de minimis contact with the twins for the one-year period in question, Thomas's argument fails because the trial court found that the second step of the analysis (i.e., whether justifiable cause existed as to lack of contact) determinative under the facts presented.

{¶13} """Ohio courts have held that justification of a parent's failure to communicate with his or her child is shown when there has been 'significant interference' with a parent's communication with a child or 'significant discouragement' of such communication."""" *In re J.P.E.*, 11th Dist. Trumbull No. 2016-T-0113, 2017-Ohio-1108, ¶ 17, quoting *In re M.E.M.*, 11th Lake No. 2010-L-020, 2010-Ohio-4430, ¶ 29, quoting *In re Kr.E., K.E., & A.E.*, 9th Dist. Lorain No. 06CA008891, 2006-Ohio-4815, ¶ 21, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph three of the syllabus. "In determining whether a natural parent's failure to have more than de minimis contact was justified, the central question is whether there was a significant interference with visitation and communication and not whether it was possible for the natural parent to have done

more to overcome the interference with visitation and communication." *Id.* at ¶ 26, citing *In re S.B.D.*, 2d Dist. Miami No. 2006-CA-25, 2006-Ohio-5133, ¶ 37. Here, under the second step of the analysis, the trial court determined that justifiable cause exists for Daniel's failure to have de minimis contact with the twins. Thus, we must decide whether such determination is against the manifest weight of the evidence under Thomas's argument.

{¶14} Thomas called Skyelynn as his first witness in his case-in-chief. (July 8, 2020 Tr. at 4). Skyelynn testified she and Daniel lived together as a couple until their break-up in March 2013. (*Id.* at 11-12). According to Skyelynn, this was the last time Daniel saw the twins. (*Id.*). Skyelynn testified that she met Daniel for lunch in June 2018 to discuss Daniel's request for contact with the twins. (*Id.* at 11). They also discussed whether Daniel would consent to an adoption of the twins by Thomas. (*Id.*). Daniel refused. (*Id.*) However, Daniel and Skyelynn agreed to meet (with the twins present) the following Tuesday (on July 3, 2018) at a neutral park per Daniel's request for contact. (*Id.* at 11-12, 17-18). Skyelynn testified that Daniel never followed up with her as to the location and time of this meeting, and thus the meeting never occurred. (*Id.* at 17-18). Moreover, Skyelynn testified that the twins never received any letters, cards, birthday or Christmas presents, or telephone calls from Daniel between November 2018 and November 2019. (*Id.* at 19).

{¶15} On cross-examination, Skyelynn testified that she could not recall if she "blocked" Daniel on Facebook between 2018 and 2019. (*Id.* at 20-21). She also testified as to being familiar with the adoption process (as to consent) since she had requested Daniel, on multiple occasions, to give his consent to the adoption of their oldest child (Danny) to Skyelynn's previous husband. (*Id.* at 21-22). Moreover, Skyelynn testified that she stopped permitting Daniel's mother, Ella Louise Mohr ("Louise") to visit with the twins in late 2018 because she believed Louise would allow Daniel contact with them. (*Id.* at 22-24). Skyelynn also stated that she did recall Louise dropping off presents to the twins in December 2018. (*Id.* at 24-25).

{¶16} Next, Thomas testified in support of his adoption petitions. (*Id.* at 25). Thomas testified that he and Skyelynn got married in March 2018. (*Id.* at 27). Thomas testified that he has never met Daniel, although he was aware that Daniel had texted Skyelynn in June 2018. (*Id.* at 27-28). Further, Thomas was informed by Skyelynn that Daniel would not consent to the adoption, and that the two never had their follow-up meeting as discussed. (*Id.* at 29). Moreover, Thomas testified that he did not recall whether Daniel ever sent cards or letters to the twins. (*Id.* at 30).

{¶17} On cross-examination, Thomas testified that both he and Skyelynn were upset that Daniel refused to give consent Thomas's adoption petitions. (*Id.*). Further, while Thomas was aware the twins received presents in December 2018, he wasn't sure from whom the presents were sent. (*Id.* at 31).

{¶18} Thomas rested his case, and Daniel called his mother, Louise (the twins' paternal grandmother) as his first witness. (*Id.* at 32). Louise testified that she had known Skyelynn since 1992. (*Id.* at 33). She testified that she had a good relationship with them and routinely visited with the twins prior to November 2018. (*Id.* at 34). According to Louise, she tried to visit the twins in late 2018 through November 2019, but she was denied access to the twins because Skyelynn told her she was afraid that she (Louise) would let Daniel have contact with them. (*Id.* at 35). Nevertheless, Louise continued to try to maintain contact with the twins by bringing them gifts for the 2018 and 2019 holidays (i.e., Halloween, Christmas, and Valentine's Day). (*Id.* at 36). Although Louise wanted to deliver the gifts personally, Skyelynn would tell her that the twins were unavailable, and Louise was directed to leave the gifts on Skyelynn's porch. (*Id.* at 36-38). In December 2018, Louise, dropped off a bag containing Christmas presents for the twins from Louise, Daniel, Danny, and other family members. (*Id.* at 37-38).

{¶19} On cross-examination, Louise testified that Daniel had personally wrapped his Christmas 2018 gifts (i.e., board games) for the twins at Louise's home prior to Louise's delivery. (*Id.* at 40-41).

{¶20} Next, Daniel called his wife, Lisa Mohr ("Lisa") as his second witness. (*Id.* at 42-43). Lisa testified that she and Daniel had been married for two years, since 2018. (*Id.* at 42-43, 45-46). Lisa testified that Daniel's only form of communication with Skyelynn was through Facebook, but he had been "blocked" by Skyelynn in 2018. (*Id.*).

Nonetheless, Lisa stated that Daniel continued to try to contact the twins through mail by sending the twins a Christmas card with money. (*Id.* at 44).

{¶21} Finally, Daniel testified on his own behalf. (*Id.* at 47). According to his testimony, he had been in a two-year drug-rehabilitation program preceding the filing of the adoption petitions. (*Id.* at 49). He testified that after his release from rehab, he contacted Skyelynn to re-establish a relationship with the twins. (*Id.* at 50). Daniel testified that he and Skyelynn met for lunch and discussed his future contact with the twins. (*Id.*). Daniel further testified that Skyelynn asked him to consent to adoption (which he refused). (*Id.* at 50-51, 57). He also testified that they agreed to a meeting at Kingsbury Park at noon on July 3, 2018. (*Id.*). However, Daniel stated that Skyelynn "blocked" him on Facebook and failed to show up at the parl.

{¶22} Further, Daniel testified he was concerned that if he called Skyelynn or showed up at her residence she would alert law enforcement and have him arrested. (*Id.* at 51-54). Daniel testified that he did send the twins Christmas gifts in December 2018. (*Id.* at 54).

{¶23} After Daniel rested his case, Thomas recalled Skyelynn to testify on rebuttal. (*Id.* at 61). According to Skyelynn, the Christmas presents for the twins were actually received for Christmas 2016 and the Christmas cards appeared to be written in Louise's handwriting. (*Id.* at 61-62).

**{¶24}** With no further evidence being introduced, the trial court determined that "Daniel could perhaps have been more assertive in attempting to have contact with J.M.M. and J.N.M., but it is clear Skyelynn [] would have resisted *any* attempts." (Emphasis added.) (Case No. 20195004, Doc. No. 43); (Case No. 20195005, Doc. No. 32).

**{¶25}** Thomas argues that because the June 29, 2018 meeting occurred outside of the one-year "look back" period the trial court should not have considered that meeting in making its determinations as to justifiable cause. However, a probate court is not restricted to focusing solely on the one-year statutory period in making such a determination. *See In the Matter of C.D.G.*, 2d Dist. Montgomery Nos. 28664 and 28665, 2020-Ohio-2959, ¶ 15. Nonetheless, we conclude that justifiable cause may be demonstrated by events either before or during the one-year prior to the filing of the petition or a combination of both.

**{¶26}** Next, Thomas challenges the trial court's determination that Skyelynn's conduct did not rise to level of significant interference so as to constitute justifiable cause. *See In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph three of the syllabus ("Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for * * * failure to communicate"). Importantly, the Supreme Court of Ohio has refused to adopt a "precise and inflexible meaning" for "justifiable cause," but instead has stated that "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause

exists." *Id.* at 367 (1985), citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301 (1980). In this regard, the Supreme Court stressed that "[t]he probate court is in the best position to observe the demeanor of the parties, *to assess their credibility, and to determine the accuracy* of their testimony." (Emphasis added.) *Id.*

{¶27} It is clear in our review of the record that the trial court determined the issue of justifiable cause based on the credibility of the witnesses. Unquestionably, Skyelynn's explanation of Daniel's lack of contact with the twins is ultimately a credibility determination, which is left to the sound discretion of the trial court. "'A trial court is "free to believe all, part, or none of the testimony of any witness who appears before it."'" *In re Adoption of K.C.*, 2014-Ohio-3985, at ¶ 26, quoting *In re Adoption of M.C.*, 4th Dist. Jackson No. 11CA5, 2011-Ohio-6527, ¶ 19, quoting *Rogers v. Hill*, 124 Ohio App.3d 468, 470 (4th Dist.1998). *See also In re J.P.E.*, 2017-Ohio-1108, at ¶ 39. As such, we conclude that the evidence supporting that Skyelynn significantly interfered with Daniel's communication and visitation with the children is weightier than the evidence that she did not.

{¶28} Accordingly, we conclude that the trial court's determination that justifiable cause exits for Daniel's failure to provide more than de minimis contact with the twins is not against the manifest weight of the evidence. Specifically, we cannot say that the trial court lost its way and created such a manifest miscarriage of justice.

{¶29} For the foregoing reasons, we hold that the trial court did not err in concluding that Daniel's consent to Thomas's adoption of J.M.M. and J.N.M. is required under R.C. 3107.07(A).

{¶30} Thomas's assignment of error is overruled.

{¶31} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**